UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| Plaintiff, | § | |
| v. | § | CIVIL ACTION NO. _____ |
| | § | |
| $20,900.00 in U.S. Currency, | § | |
| Defendant. | § | |

**VERIFIED COMPLAINT FOR CIVIL FORFEITURE
IN REM AND NOTICE TO POTENTIAL CLAIMANTS**

The United States of America files this action for forfeiture *in rem* and alleges upon information and belief the following:

*Nature of the Action*

1.      This is an action to forfeit property to the United States pursuant to 21 U.S.C. § 881(a)(6) and 18 U.S.C. § 981(a)(1)(C).

*Defendant Property*

2.      The Defendant is $20,900.00 in United States currency ( the "Defendant Property").

3.      On or about May 6, 2021, law enforcement seized the Defendant Property from the main zippered compartment of the backpack carried by Darius Jamar FRANCIS in Terminal A at Houston's Intercontinental Airport (IAH) in Houston, Texas.  The Defendant Property is currently in an account within the custody of the United States Customs and Border Protection.

4.      On or about February 22, 2022, Darius Jamar FRANCIS (hereinafter "Claimant") submitted a claim to Homeland Security Investigations ("HSI") through U.S. Customs and Border Protection ("CBP") contesting administrative forfeiture of the Defendant Property.

*Jurisdiction and Venue*

5.      This Court has subject-matter jurisdiction pursuant to 28 U.S.C. §§ 1345 and 1355.

6.      Venue is proper in this Court pursuant to 28 U.S.C. §§ 1355(b)(1), 1391(b), 1395, and/or 21 U.S.C. § 881(j).

*Statutory Basis for Forfeiture*

7.      The Defendant Property is subject to forfeiture under 21 U.S.C. § 881(a)(6), which provides for the forfeiture of all moneys furnished or intended to be furnished by any person in exchange for a controlled substance or listed chemical in violation of the Controlled Substances Act (21 U.S.C. § 801, *et seq.*), all proceeds traceable to such an exchange, and all moneys used or intended to be used to facilitate any violation of the Controlled Substances Act.

8.      The Defendant Property is subject to forfeiture under 18 U.S.C. § 981(a)(1)(C), which provides for the forfeiture of any property which constitutes or is derived from proceeds traceable to a violation of any offense constituting "specified unlawful activity" as defined in 18 U.S.C. § 1956(c)(7), or a conspiracy to commit such offense.  Pursuant to 18 U.S.C. § 1956(c)(7), which incorporates by reference offenses listed in 18 U.S.C. § 1961(1), "specified unlawful activity" includes the felonious manufacture, importation, receiving, concealment, buying, selling, or otherwise dealing in controlled substances as defined in section 102 of the Controlled Substances Act.

*Factual Basis*

9.      On May 6, 2021, HSI Special Agents and Task Force Officers (hereinafter "Law Enforcement") observed two individuals sitting beside and talking to each other near the jetway to Gate A24 in Terminal A, out of which a flight to Los Angeles was scheduled to depart, at Houston's Intercontinental Airport (IAH) in Houston, Texas. The two individuals were later identified as Claimant Darius Jamar FRANCIS and C.N.J..

2

10.     Agents and officers introduced themselves as law enforcement to C.N.J. and asked to speak to C.N.J., and C.N.J. agreed.

11.     Law enforcement inquired about C.N.J.'s travel itinerary and the purpose of this trip. C.N.J. stated that he was traveling to Los Angeles to "hang out for a few days." C.N.J. gave verbal consent to law enforcement to search the red nylon duffel bag he was carrying, inside of which no contraband or currency was observed. When asked if he was travelling with any currency, C.N.J. stated that he had $9,000.00 United States Currency in a checked suitcase.

12.     Referring to the Claimant Darius Jamar FRANCIS, law enforcement asked C.N.J. who the individual he was sitting beside to was. C.N.J. stated that he did not know who FRANCIS was, and that he had never seen FRANCIS before he arrived at the airport that day.

13.     At the end of the conversation, law enforcement thanked C.N.J. for his time and observed C.N.J. joining the end of the boarding line.

14.     Agents and officers then introduced themselves as law enforcement to Claimant FRANCIS and asked to speak to him, and Claimant FRANCIS agreed.

15.     Referring to C.N.J., law enforcement asked Claimant FRANCIS if he knew the person they were just talking to. Claimant FRANCIS stated that person was his friend, and that they were traveling together to California to hang out and do some shopping.

16.     In response to law enforcement's questions, Claimant FRANCIS stated that he purchased his one-way ticket to Los Angeles the day before because he did not know when he was returning to Houston, that he worked for a company called Central Freight driving a forklift, and that he banked at Wells Fargo.

17.     Law enforcement asked Claimant FRANCIS if they could search his backpack, and FRANCIS gave verbal consent. Agent unzipped the main compartment of the black nylon

3

backpack FRANCIS was carrying and immediately observed a mostly loose stack of United States Currency approximately two inches thick and which appeared to be mostly one-hundred dollar bills.  Law enforcement also observed two smaller stacks of currency within the larger stack.  The two smaller stacks were banded with money straps that bore a teller stamp from First Convenience Bank.

18.     Law enforcement also observed the distinct odor of marijuana emanating from within the backpack.

19.     When asked by law enforcement, Claimant FRANCIS stated that the money was from his work earnings, but he would not give a specific day or time he was supposed to work again.  Record check revealed that FRANCIS' employment with Central Freight was voluntarily terminated on or about August 14, 2020, which was approximately nine (9) months prior to the date of the encounter.

20.     Claimant FRANCIS stated that he owned a clothing company, but he gave conflicting names of the company and refused to show any website or other information to law enforcement to corroborate that claim.

21.     Claimant FRANCIS stated that he never had any trouble with the law.  However, record check revealed that FRANCIS was arrested on February 13, 2014 for Possession of Marijuana in Harris County, Texas, and was arrested again on February 18, 2014 for Possession of Marijuana in Harris County, Texas. Defendant was convicted of both offenses, respectively, on July 21, 2014 and July 22, 2014 and was sentenced to concurrent terms in county jail.

22.     At some point during the conversation between law enforcement and Claimant FRANCIS, C.N.J. left the boarding line and approached the law enforcement and FRANCIS.  C.N.J. appeared somewhat agitated and wanted to know what was going on.  Law enforcement

informed C.N.J. that they are dealing with the friend (referring to Claimant FRANCIS) whom C.N.J. denied knowing and that it did not involve C.N.J.. C.N.J. then claimed that the $9,000.00 of the money in Claimant FRANCIS' backpack belonged to him. Law enforcement asked C.N.J. why his money would be in a stranger's backpack, and C.N.J. stated that he asked the person to hold it for him while he went to the restroom.

23.     C.N.J. then followed law enforcement and Claimant FRANCIS to a restricted area from Terminal A to Terminal D, where law enforcement provided Claimant FRANCIS with a receipt for the Defendant Property.

24.     Claimant FRANCIS admitted to law enforcement that he was going to California to purchase marijuana and clothing.

25.     Law enforcement escorted Claimant FRANCIS to the Spirit ticket counter, and both the Claimant and C.N.J. were rebooked on another flight.

26.      Before parting ways, C.N.J. stated something to the effect of "this is just a cat and mouse game" and "sometimes you win and sometimes you lose."

27.     A canine trained in the detection of narcotics alerted to the presence of narcotics on the Defendant Property. This was accomplished by a preliminary sweep of a row of office cubicles with no alerts. After placing the Defendant Property in an empty desk drawer, a secondary sweep by the K9 resulted in an alert to the currency.

28.     The United States currency which totaled $20,900.00 was in the following denominations:

- $100     x     189     =     $18,900.00
- $50      x     40      =     $2,000.00

5

29.     Defendant Property constitutes or is derived from proceeds traceable to a violation of an offense constituting "specified unlawful activity" as defined in 18 U.S.C. § 1956(c)(7)—specifically, the felonious manufacture, importation, receiving, concealment, buying, selling, or otherwise dealing in controlled substances as defined in section 102 of the Controlled Substances Act, which is a listed offense in 18 U.S.C. § 1961(1) and incorporated by reference in 18 U.S.C. § 1956(c)(7)—or a conspiracy to commit such offense.

30.     The Defendant Property was furnished or intended to be furnished in exchanged for a controlled substance or listed chemical in violation of the Controlled Substances Act, 21 U.S.C. § 801, et. seq., is proceeds traceable to such an exchange, or was used or intended to be used to facilitate any violation of the Controlled Substances Act, 21 U.S.C. § 801, et. seq.

*Conclusion*

31.     The Defendant Property is subject to forfeiture under 21 U.S.C. § 881(a)(6) and/or 18 U.S.C. § 981(a)(1)(C) as property constitutes or traceable to proceeds of drug trafficking.

<u>NOTICE TO ANY POTENTIAL CLAIMANTS</u>

YOU ARE HEREBY NOTIFIED that if you assert an interest in the Defendant Property which is subject to forfeiture and want to contest the forfeiture, you must file a verified claim which fulfills the requirements set forth in Rule G of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions.  A verified claim must be filed no later than thirty-five (35) days from the date this Complaint has been sent in accordance of Rule G(4)(b).

An answer or motion under Rule 12 of the Federal Rules of Civil Procedure must be filed no later than twenty-one (21) days after filing the verified claim.  The claim and answer must be filed with the United States District Clerk for the Southern District of Texas, either electronically or at the United States Courthouse, 515 Rusk Avenue, Houston, Texas 77002.  A copy must be

served upon the undersigned Assistant United States Attorney at the United States Attorney's Office, 1000 Louisiana, Suite 2300, Houston, Texas 77002.

*Requested Relief*

Wherefore, the United States of America requests that judgement of forfeiture be entered against Defendant Property in favor of the United States of America under 21 U.S.C. § 881(a)(6) and 18 U.S.C. § 981(a)(1)(C) in addition to such costs and other relief to which the United States of America may be entitled.

Respectfully submitted,

JENNIFER B. LOWERY
UNITED STATES ATTORNEY

By:   */ Yifei Zheng*
      YIFEI ZHENG
      Assistant United States Attorney
      Southern District of Texas No: 3328108
      New York State Bar No: 5424957
      1000 Louisiana Street, Suite 2300
      Houston, Texas 77002
      Tel. (713) 567-9547

<u>Verification</u>

I, Terry Muise, a Special Agent with Homeland Security Investigations, declare under penalty of perjury, as provided by 28 U.S.C. § 1746, that I have read the foregoing Verified Complaint for Civil Forfeiture In Rem and Notice to Potential Claimants, and that the facts stated in the Complaint are based upon my personal knowledge, upon information obtained from other law enforcement personnel, or upon information I obtained in the course of my investigation, and they are true and correct to the best of my knowledge and belief.

Executed on the __18th__ day of May, 2022.

Terry Muise
Special Agent
Homeland Security Investigations

8